UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WHALECO INC.,<br><br>           Plaintiff,<br><br>   v.<br><br>TEMUPAID LLC, CLOUD INVESTMENT HOLDINGS, LTD., AND DOES 1-5,<br><br>           Defendants. | Civil Action No.<br><br>**JURY DEMAND** |

2825606

Plaintiff Whaleco Inc. d/b/a Temu ("Plaintiff," "Whaleco," or "Temu"), by its undersigned attorney, hereby brings the present action against Defendants TemuPaid LLC, Cloud Investment Holdings, Ltd., and Does 1-5 (collectively, "Defendants"), for damages and injunctive relief, and in support thereof alleges as follows:

## NATURE OF THE ACTION

This is an action for trademark infringement under the Lanham Act, 15 U.S.C. 1114 *et seq.*; for false advertising, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) *et seq.*; for trademark dilution in violation of 15 U.S.C. § 1125(c) *et seq*; for unlawful registration of domain name in violation of 15 U.S.C. § 1125(d) *et seq;* trademark infringement and unfair competition under Massachusetts common law; trademark infringement and dilution under M.G.L. c. 110H *et. seq*; and deceptive trade practices under M.G.L. c. 93A *et seq*.

## THE PARTIES

1. Whaleco is a Delaware corporation with its principal place of business at 31 Saint James Ave., Suite 355, Boston, Massachusetts 02116.

2. Upon information and belief, Defendant TemuPaid LLC is a domestic limited liability company organized in 2023 under the laws of the State of Massachusetts with a registered agent located at 867 Boylston St., Boston, Massachusetts 02116.

3. Upon information and belief, Defendant Cloud Investment Holdings, Ltd. is a Hong Kong limited company with its principal place of business at 135 Bonham Strand Trade Centre 135 Bonham Strand, Hong Kong.

4. Defendant Does 1 through 5 are individuals or entities whose identity, name, and address are presently unknown. Plaintiff does not know any of the Does identities or locations at this time and has been unable to discover them through reasonable due diligence.

5. The true names and capacities of the defendants named herein as Does 1 through 5, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, which therefore sues those defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a Doe defendant is an actual person or entity involved in the acquisition, ownership, or use of the infringing domain names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a Doe is legally responsible for the events herein after alleged, and legally caused injury and damages proximately thereby to Plaintiff as herein alleged. Plaintiff will seek leave to amend this Complaint when the true names and capacities of the Doe defendants have been ascertained.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over the claims in this action pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because such state law claims are so related to Plaintiffs' claims under federal law, which are within this Court's original jurisdiction, that such state law claims are part of the same case or controversy.

7. This Court has personal jurisdiction over Defendant TemuPaid LLC in that, upon information and belief, TemuPaid LLC engages in business in Massachusetts; and has caused Plaintiff's injuries alleged herein from its acts within the State of Massachusetts.

8. Defendant Cloud Investment Holdings, Ltd. is subject to personal jurisdiction in this District because it has conducted business in this District, specifically by forming and registering the corporate name of TemuPaid LLC in the State of Massachusetts with a registered agent in this District.

9. This Court has personal jurisdiction over Defendants Does 1-5 since each of the Defendants directly targets business activities towards consumers in the United States, including the State of Massachusetts. Each of the Defendants is committing tortious acts in Massachusetts, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Massachusetts.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Massachusetts.

## FACTS COMMON TO ALL COUNTS

11. Whaleco operates an ecommerce marketplace at Temu.com ("Temu.com" or the "Temu Marketplace"). The Temu Marketplace is also accessible via the Temu mobile application, which can be downloaded on both the Apple App Store and the Google Play Store.

12. The Temu Marketplace has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the Temu Marketplace from third party sellers in many categories, including clothing, household goods, cosmetics, appliances, and electronics.

13. The Temu Marketplace connects consumers with sellers, manufacturers, and brands around the world. The Temu Marketplace is committed to bringing the most affordable quality products onto its platform to enable consumers and sellers to transact in an inclusive environment. Temu was founded in Boston, Massachusetts.

14. Plaintiff, through its affiliate, Five Bells Limited, is the exclusive licensee of all rights, title, and interest in and to the Temu word marks and Temu design marks (collectively, the "Temu Marks") identified in the below chart.

| Mark | Registration No. | Products/Services |
|---|---|---|
| [TEMU logo] | 7,145,476 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| Temu | 7,157,165 | Downloadable computer application software for mobile phones, namely, software for online shopping; computer programs, downloadable for online shopping; Downloadable computer software for online shopping; Downloadable computer software for use as an electronic wallet; Recorded computer programs for online shopping in Class 9. |
| [TEMU logo] | 7,157,220 | Downloadable computer application software for mobile phones, namely, software for online shopping; Downloadable computer programs for online shopping; Downloadable computer software for use as an electronic wallet; Downloadable computer software for online shopping; Recorded computer programs for online shopping in Class 9. |

| Mark | Registration No. | Products/Services |
|---|---|---|
| Temu | 7,164,306 | Provision of an online marketplace for buyers and sellers of goods and services in Class 35. |
| Temu | 7,329,132 | Advertising services; development of marketing strategies, concepts and tactics, namely, audience development, brand awareness, online community building and digital word of mouth communications; providing business information; marketing services; systemization of information into computer databases; sales promotion for others in Class 35. |

15. The registrations are valid, subsisting, unrevoked, and uncancelled pursuant to 15 U.S.C. § 1065. The registrations for the Temu Marks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Temu Marks pursuant to 15 U.S.C. § 1057(b).

16. The Temu Marketplace has enjoyed tremendous success in the U.S. market. More than one year after its launch, the Temu app surpassed 100 million downloads on the Google Play Store alone and has been one of the most downloaded free applications in both the Google Play Store and the Apple App Store.

17. Plaintiff maintains quality control standards for all Temu sites and applications. The Temu app is available for download through verified app stores, such as the Apple App Store and Google Play.

18. The Temu Marks are famous marks.

19. Temu and the Temu Marks are universally recognized across the United States. Temu began operating in the U.S. marketplace in 2022, rapidly gaining a huge customer base

across the United States. Plaintiff uses the Temu marks to identify its Temu Marketplace and goods are sold by merchants on its website and through its mobile apps. Temu advertised during both the 2023 and 2024 Super Bowls, making itself known to hundreds of millions of Americans. Temu also heavily advertises across the country on Facebook and other online platforms. Temu's mobile apps are some of the most popular in the country. The Temu mobile app is currently the number one most popular free app on the Google Play Store and the number one most popular free app in the shopping category and seventh most popular app overall in the Apple App Store. The Marks are recognized by consumers and are associated with Temu's online marketplace. The Marks are further associated with the affordability and quality of goods available through the Temu online marketplace and application. Temu's marks are widely recognized by the general consuming public of the United States as a designation of source of the services offered by Temu.

20. The Temu Marks have never been assigned or licensed to any of the Defendants in this matter.

21. The Temu Marks are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned. The Marks are also unique, as "Temu" itself is a word created by the brand Temu for its use and is therefore not commonly used by any other brand.

22. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Temu Marks by working with key influencers and content creators, advertising on social media, and purchasing commercial ad spots, including its 2023 and 2024 "Shop Like a Billionaire" Super Bowl ads, which have been viewed over 1 billion times.

23. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's rights in the Temu Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

24. On information and belief, in or about August 14, 2023, "TemuPaid LLC" was incorporated and registered with the Secretary of the Commonwealth of Massachusetts. This use of "Temu" in the name of Defendant TemuPaid LLC was without permission from Plaintiff.

25. In addition to registering TemuPaid LLC in the Commonwealth of Massachusetts, on information and belief, Defendants have been advertising in Mandarin and English using the TemuPaid LLC name and in websites bearing the counterfeit "TemuPaid" mark, all without Plaintiff's permission. Below is a screenshot of Defendants' website, which includes a white and orange logo with the word "Temu" that imitates Temu's marks.



26. On information and belief, Defendants also engaged in a number of activities adverse to the Plaintiff as part of their effort to advertise its fraudulent product or services. Plaintiff identified the Temu Marks being used in connection with certain domain names, URLs, applications and/or unauthorized promotions (collectively, the "Infringing Websites"), including

but not limited to Temupaid888.com, Temupaid666.com, Temupaid667.com, Temupaid999.com, Temupaid99.com, Temupaid668.com, Temupaid88.com, and https://www.Temupaid.com/, and in Defendants' registered business and/or trade name. The infringing app developed by Defendant under the name of "TemuPaid" was available on the Google Play Store, and was or is still listed on several application stores around the world, such as https://www.appbrain.com/app/temupaid/com.cloudapp.temupaida and https://vi.ldplayer.net/apps/temupaid-on-pc.html. Defendants reproduced, displayed, and/or distributed the Temu Marks in connection with the Infringing Websites without authorization or license from Plaintiff.

27. Defendants' use of the Temu Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of products and services through the Infringing Websites has harmed Plaintiff as it has caused consumer confusion and led to consumer deception.

28. Defendants, without authorization or license from Plaintiff, knowingly and willfully used the Temu Marks in connection with unauthorized services, products and business and/or trade name. The Infringing Websites featured the Temu Marks and/or offered application downloads and other purportedly Temu-related content that are not authentic or associated with genuine Temu applications or websites. Plaintiff did not develop, inspect, or publish the websites or their applications, and did not approve them for distribution or any usage in commerce.

29. On information and belief, each Infringing Website offered infringing products and/or services to the United States, including Massachusetts, and each Defendant had interactions or completed transactions into the United States, including with Massachusetts residents, while using the Temu Marks without authorization or license. These interactions or transactions include

but are not limited to transmitting applications for download, purportedly offering products for sale, and purportedly offering Temu coupons or credits. None of these were authorized by Temu.

30. Defendants' ownership and/or operation of the Infringing Websites and app harmed Plaintiff by using the Temu Marks in their domain names, website content, and/or applications without authorization, creating false associations with Temu that were intended to, and have, deceived consumers.

31. Defendants, on information and belief, have registered a limited liability company in Massachusetts using Plaintiff's valuable Temu Marks in its business and/or trade name, in the same city and region as Temu's office location to take advantage of Temu's famous marks. Defendants have claimed on their website to be an "Official cooperation platform" which "has officially cooperated with American cross-border e-commerce Temu" on its websites – all of which is false and fraudulent. Defendants used Temu's Marks without authorization, causing confusion with Temu's Marks and the goods and services provided by Plaintiff. Defendants engaged in extensive promotional efforts through the Infringing Websites to fraudulently suggest a relationship (that did not actually exist) between itself and Plaintiff in connection with the distribution, advertising and sales of its products and services and catering to the prospective business relationships.

32. On information and belief, a WhatsApp group was created where numerous additional false and fraudulent statements were made suggesting an actual relationship between Defendant TemuPaid LLC with Temu.com and that customers of Temu.com could use the fraudulent TemuPaid app to generate revenue via that fake app.

33. Multiple websites demonstrate that the TemuPaid app was available in the Android app store and allowed members of the public to access such app. As another example, Defendants

have plagiarized the background, cartoon character and font from the authentic Temu app and published them on their websites and app stores.

34. Upon information and belief, Defendants may reinstate the Infringing Websites and and/or relaunch the infringing app to offer unauthorized products and services and continue to create further counterfeit websites or applications that infringe upon the Temu Marks unless preliminarily and permanently enjoined. Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §1114)

35. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

36. Plaintiff's Temu Marks and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value to Plaintiff. The Temu Marks are highly distinctive and have become universally associated in the public mind with Plaintiff's Temu Marketplace and related services. Consumers associate Plaintiff's Temu Marks with Plaintiff, its Temu Marketplace, and its Temu brand.

37. Without Plaintiff's authorization or consent and having knowledge of Plaintiff's rights in the famous Temu Marks, Defendants have developed, distributed, offered for sale, and/or offered products or services to the consuming public in direct competition with Plaintiff. The Infringing Websites (including web pages and applications provided through them) were marketed and offered using marks which are identical or confusingly similar to Plaintiff's Temu Marks. This direct competition of Defendants' unauthorized and unlicensed use and Plaintiff's genuine use of the Temu Marks on business and/or trade name, products or services negatively affected consumers and interstate commerce.

38. Defendants' use of infringing and counterfeit versions of Plaintiff's Temu Marks in conjunction with Defendants' unauthorized business and/or trade name, services or products was likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the affiliation, connection, and association of Defendants with Plaintiff, and/or as to the origin, sponsorship, and approval of Defendants' activities in connection with the Temu Marks.

39. Defendants' use of the Temu Marks in their business and/or trade name and the Infringing Websites caused confusion, mistake, and deception as to the nature, characteristics, origin, and qualities of the services or products. Defendants' unauthorized use was likely to deceive the public into believing the unauthorized services or products as being offered by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, which in turn causes damage to Plaintiff's reputation, goodwill, sales, and future business opportunities.

40. Defendants' activities constituted willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer harm and injury to its goodwill and reputation.

## COUNT TWO
## UNFAIR COMPETITION, FALSE ADVERTISING, AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. §1125(a))

42. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

43. The unauthorized services and products sold and/or offered for sale by Defendants are of the same nature and type as Plaintiff's marketplace and services offered by Plaintiff and, as such, Defendants' use of the Temu Marks was likely to cause confusion to the general purchasing public.

44. By misappropriating and using Plaintiff's Temu Marks and business and/or trade names, Defendants created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Websites and associated content by Plaintiff.

45. Defendants' unlawful, unauthorized, and unlicensed development, distribution, offer for sale, and/or sale of the unauthorized services and products creates express and implied misrepresentations that the services and products were created, authorized, or approved by Plaintiff, which increased Defendants' profit and further damaged and injured Plaintiff and the Temu brand.

46. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Websites to the general public involved the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer harm and injury to its goodwill and reputation.

**COUNT THREE**
**TRADEMARK DILUTION UNDER SECTION 43(C) OF THE LANHAM ACT**

48. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

49. Plaintiff's Temu Marks are famous. These marks are known throughout the world and referenced in national media and social platforms.

50. By offering apps, domain names and fraudulent services that are part of the Temu brand and by imitating Temu's mark in its registered corporate name, Defendants have caused and are likely to continue to cause dilution of Plaintiff's famous trademarks by either (a) blurring, in that Defendants' actions have impaired and will continue to impair the distinctiveness of the

famous Temu Marks; or (b) tarnishment, in that Defendants' actions have harmed and will continue to harm the reputation of the famous Temu Marks.

51. As a direct and proximate result of Defendants' actions, Plaintiff has been and will continue to be damaged, and unless Defendants are enjoined by this Court from promoting and publishing the Infringing Websites bearing Plaintiff's Temu Marks, the damage to Plaintiff will only increase.

52. Plaintiff has no adequate remedy at law.

## COUNT FOUR
## UNLAWFUL DOMAIN NAME REGISTRATION PURUSANT TO ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

53. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

54. Despite having no rights in the Temu Marks and without Plaintiff's consent, Defendants registered the Infringing Websites. Upon information and belief, Defendants fully controlled, operated, and created content on the Infringing Websites and made fraudulent statements thereon.

55. Furthermore, Defendants' fraudulent statements harmed Temu's customers.

56. The operation of the Infringing Websites which had used Plaintiff's Temu Marks despite having no rights or license to use the Temu Marks demonstrated Defendants' bad faith.

57. Consumers were significantly likely to confuse and associate Temu.com with Defendants' TemuPaid.com and its unscrupulous and fraudulent services.

58. Defendants' control of the Infringing Websites allowed them to make money off the website by tricking consumers and charging fees for their fraudulent statements and services.

59. Unless the Court orders the cancellation or transfer of the Infringing Websites to Plaintiff, Defendants may continue to attempt to damage Plaintiffs' reputation through the use of

the Infringing Websites and to attempt to continue to collect payment from Temu.com's consumers and/or suppliers who may believe the fake application may be affiliated with Temu.com when this is not the case.

## COUNT FIVE
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER MASSACHUSETTS COMMON LAW

60. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

61. Defendants' acts alleged herein constitute infringement of Plaintiff's rights in the Temu Marks and unfair competition under the common law of the State of Massachusetts.

62. Upon information and belief, the acts of Defendants complained of herein have been done intentionally and willfully with intentional disregard of Plaintiff's rights.

63. By reason of the wrongful acts of Defendants herein, Plaintiffs have suffered, are suffering, and will continue to suffer damage, and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiff will increase.

64. Plaintiff has no adequate remedy at law.

## COUNT SIX
### VIOLATION OF M.G.L. C. 93A

65. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

66. Defendants have used colorable imitations of the Temu Marks in the sale, distribution, offering for sale, or advertising of services on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

67. Plaintiff did not grant consent to Defendants for use of the Temu Marks.

68. On information and belief, Defendants used the Temu Marks with the intention of causing confusion or mistake or to deceive consumers into believing they were soliciting Temu's services.

69. Plaintiffs have been damaged and will continue to be damaged by Defendants' unlawful, unfair, fraudulent, and deceptive use of the Temu Marks as alleged herein.

70. As a direct and proximate result of Defendant's conduct, Plaintiffs have been harmed and are entitled injunctive relief, as well as damages against Defendants in an amount according to proof at trial, including double or treble damages, costs, and attorneys' fees, and to any and all other relief the Court deems just and proper under the law.

71. Defendants' conduct was intentional, willful, wanted malicious, and in conscious disregard of Plaintiff's rights, thereby justifying an award of three times Plaintiff's damages, together reasonable attorneys' fees, pursuant to M.G.L. c.93A, §§2 and 11.

## COUNT SEVEN
## VIOLATION OF M.G.L. C. 110H § 13

72. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

73. Plaintiff's Temu Marks are distinctive and famous. These marks are known throughout the world and referenced in national media and social platforms.

74. By offering apps, domain names and fraudulent services that are part of the Temu brand, Defendants have caused and are likely to continue to cause injury to Plaintiff's business reputation and dilution of Plaintiff's famous trademark by either (a) blurring, in that Defendants' actions have impaired and will continue to impair the distinctiveness of the famous Temu Marks; or (b) tarnishment, in that Defendants' actions have harmed and will continue to harm the reputation of the famous Temu Marks.

75. As a direct and proximate result of Defendants' actions, Plaintiff has been and will continue to be damaged, and unless Defendants are enjoined by this Court from promoting and publishing the Infringing Websites bearing Plaintiff's Temu Marks, the damage to Plaintiff will only increase.

76. Plaintiff has no adequate remedy at law.

## JURY DEMAND

77. Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants in favor of Plaintiff on all counts as follows:

A. A judgment in favor of Plaintiff on all of the claims for relief pleaded herein;

B. An order immediately requiring the discontinuation of the use of the "TemuPaid" name in connection with the LLC currently bearing that name and requiring a name change and/or the administrative dissolution of that registration with the Secretary of the Commonwealth;

C. An order enjoining further uses of the TemuPaid websites and domains;

D. An order that Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from infringing, diluting or otherwise misusing the Temu Marks, including by:

a. using the Temu Marks, or any confusingly similar designation, word, translation, name or symbol alone or in combination with other words, as a trademark, service mark, trade name, trade name component, corporate name, corporate

        named component, or otherwise, to market, promote, distribute, advertise, or identify said defendants' goods or services;

    b. holding out in any manner whatsoever that Defendants or Defendants' services or products are in any way sponsored by, or associated or affiliated with Plaintiff;

    c. using the Temu Marks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any website, applications, or any domain names;

    d. engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

    e. encouraging, participating in or assisting in any of the above activities;

E. An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein and that the amount of damages for infringement of Plaintiff's Temu Marks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F. In the alternative, that Plaintiff be awarded

    a. Statutory damages for trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) of $2,000,000 for each and every use of the Temu Marks;

    b. Statutory damages pursuant to 15 U.S.C. § 125(d) *et seq*.

G. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendants;

H. That Plaintiff be awarded reasonable attorneys' fees and costs; and

I. That Plaintiff be granted such other and further relief as the court deems just and proper.

Respectfully submitted,

Dated: November 6, 2024          By:   /s/ Erin E. Meyer
Erin E. Meyer - # 274244
EMeyer@keker.com
Ajay S. Krishnan (*Pro Hac Vice Forthcoming*)
AKrishnan@keker.com
Michelle Ybarra (*Pro Hac Vice Forthcoming*)
MYbarra@keker.com
Matan Shacham (*Pro Hac Vice Forthcoming*)
MShacham@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Attorneys for Plaintiff WHALECO, INC.*